IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
PECOS DIVISION

| | | |
|---|---|---|
| PREWIT LAND AND MINERALS LTD.; <br> BARBARA H. PREWIT; <br> JOHN C. PREWIT; <br> JOHN C. PREWIT, as Trustee of the <br> JOHN C. PREWIT REVOCABLE TRUST; <br> STEPHEN NEIL PREWIT; <br> STEPHEN NEIL PREWIT AND MONICA <br> PREWIT, as Co-Trustees of the STEPHEN <br> NEIL PREWIT & MONICA PREWIT <br> REVOCABLE TRUST; <br> MICA POWELL HOPKINS; <br> JOHNNIE MARIE POWELL ASHLEY; <br> JPSA FAMILY INVESTMENTS, LTD.; and <br> BERNADETTE MARY KIELY <br>     *Plaintiffs*, <br><br> v. <br><br> CIMAREX ENERGY CO. <br>     *Defendant*. | § <br> § <br> § <br> § <br> § <br> § <br> § <br> § <br> § <br> § <br> § <br> § <br> § <br> § <br> § <br> § <br> § <br> § <br> § <br> § | <br><br><br><br><br><br><br><br><br><br> Cause No. 4:21-cv-47 <br><br><br><br><br><br> JURY TRIAL DEMANDED |

## PLAINTIFFS' ORIGINAL COMPLAINT

To the Honorable Court:

Plaintiffs Prewit Land and Minerals Ltd.; Barbara H. Prewit; John C. Prewit; John C. Prewit, as Trustee of the John C. Prewit Revocable Trust; Stephen Neil Prewit; Stephen Neil Prewit and Monica Prewit, as Co-Trustees of the Stephen & Monica Prewit Revocable Trust; Mica Powell Hopkins; Johnnie Marie Powell Ashley; JPSA Family Investments, Ltd.; and Bernadette Mary Kiely (collectively, the "Prewit Family") complain of Defendant Cimarex Energy Co. ("Cimarex") and show the following.

### INTRODUCTION

1. The Prewit Family own mineral interests in Culberson County, Texas under lease to Cimarex. The Prewit Family contends that Cimarex has failed to fully develop the minerals

and failed to protect the minerals under lease from drainage, as required by the express terms of the lease and covenants implied under Texas law. The Prewit Family seeks damages for lost royalties from Cimarex's breaches of the Prewit Family Lease.

## PARTIES

2. Plaintiff Prewit Land and Minerals Ltd. is a Texas limited partnership with its principal place of business in Dallas County Texas.

3. Plaintiff Barbara H. Prewit is an individual and resident of Dallas County, Texas.

4. Plaintiff John C. Prewit, individually and as trustee of the John C. Prewit Revocable Trust, is a resident of Dallas County, Texas.

5. Plaintiff Stephen Neil Prewit, individually and in his capacity as co-trustee of the Stephen & Monica Prewit Revocable Trust, is a resident of Scott County, Kansas.

6. Plaintiff Monica Prewit, in her capacity as co-Trustee of the Stephen & Monica Prewit Revocable Trust, is an individual and resident of Scott County, Kansas.

7. Plaintiff Mica Powell Hopkins is an individual and resident of Dallas County, Texas.

8. Plaintiff Johnnie Marie Powell Ashley is an individual and resident of Collin County, Texas.

9. Plaintiff JPSA Family Investments, Ltd. is a Texas limited partnership with its principal place of business in Collin County, Texas.

10. Plaintiff Bernadette Mary Kiely is an individual and resident of Orange County, California.

11. Defendant Cimarex Energy Co. is a Delaware corporation with its principal place of business in Denver, Colorado. Defendant Cimarex Energy Co. may be served through its

registered agent: Corporation Service Company, 211 E. 7th Street, Suite 620 Austin, Texas 78701.

## JURISDICTION AND VENUE

12.   This Court has diversity jurisdiction under 28 U.S.C. § 1332. Plaintiffs are citizens of Texas, Kansas, and California. The general partners and limited partners of Prewit Land and Minerals Ltd. and JPSA Family Investments, Ltd. are citizens of Texas. Defendant is a citizen of Delaware and Colorado. The amount in controversy exceeds the sum of $75,000.

13.   Venue is proper in the Pecos Division because this action concerns property located in Culberson County, Texas. 28 U.S.C. § 124(d)(6).

## FACTS

### The Prewit Family Lease.

14.   The Prewit Family are the Lessors of an oil and gas lease, with Cimarex as a Lessee (the "Prewit Family Lease"). The Prewit Family Lease was executed on September 17, 2008, and recorded in the official public records of Culberson County, Texas in Volume 97 at Page 160. On or about May 21, 2015, the Prewit Family Lease was amended, and then ratified. The Oil and Gas Lease Amendment and Ratification was recorded in the official public records of Culberson County, Texas in Volume 3 at Page 264.

15.   The following members of the Prewit Family signed the May 2015 amendment to the Prewit Family Lease: Barbara H. Prewit, Mica Powell Hopkins, Bernadette Mary Kiely, Johnnie Marie Powell Ashley, Stephen Neil Prewit, John Collins Prewit, Mica Dawn Powell, and Eleanor Elizabeth Powell. Since May 2015, the following Prewit Family members transferred their mineral interests covered by the Prewit Family Lease:

3

      a.      By mineral deed dated September 1, 2016, Barbara H. Prewit transferred her interest to Plaintiff Prewit Land and Minerals Ltd.

      b.      By mineral deed dated November 9, 2017, John Collins Prewit transferred his interest to Plaintiff John C. Prewit as trustee of the John C. Prewit Revocable Trust.

      c.      By mineral deed dated January 23, 2020, Stephen Neil Prewit transferred his interest to Plaintiffs Stephen Neil Prewit and Monica Maria Prewit, as co-trustees of the Stephen & Monica Prewit Revocable Trust.

      d.      By mineral deed dated November 12, 2020, Johnnie Marie Powell Ashley transferred her interest to Plaintiff JPSA Family Investments, Ltd., a Texas limited partnership.

16.      The Prewit Family Lease covers the rights to oil and gas within formations under ten noncontiguous tracts of land in Culberson County, Texas, comprising 3,706.15 acres of land. The lease overlies the Wolfcamp and Bone Spring formations of the Delaware Basin, one of the most productive areas in the country for oil and gas production.

17.      In 2010, Shaw Interests, Inc. acquired the Prewit Family Lease for Cimarex. Cimarex is the operator of the Prewit Family Lease. In September 2013, Cimarex entered into an agreement with Chevron U.S.A. Inc. for the joint development of their combined leasehold within the western portion of the Delaware Basin. Cimarex is the operator of the joint development area that covers approximately 104,000 acres. The Prewit Family Lease is a part of the acreage covered by the joint development agreement between Cimarex and Chevron. Chevron's interest under its agreement with Cimarex derives from its fee mineral interests in sections within the joint development area. Cimarex is the operator of all wells within the joint

development area and Plaintiffs' lessee, and Cimarex owes its duties to Plaintiffs to reasonably develop the Lease and protect the Lease against drainage.

18.     Cimarex has included the rights to oil and gas covered by the Prewit Family Lease into ten pooled units (the "Prewit Units") as follows:

| Name of Pooled Unit | Size of Pooled Unit | Prewit Family's Aggregate Royalty Interest |
|---|---|---|
| Assault 14 Unit | 1,023.00 Acres | 10.805% |
| Day Star 20 Unit | 1,023.48 Acres | 4.672% |
| Tim Tam 24 Unit | 684.40 Acres | 16.205% |
| Gallant Fox 37 Unit | 1,353.10 Acres | 8.030% |
| Macbeth 22 Fee Unit | 683.72 Acres | 15.623% |
| Middleground 16 Unit | 682.00 Acres | 16.204% |
| Prewit Omaha 26 Unit | 682.10 Acres | 16.204% |
| Silver Charm 1 Unit | 1,021.90 Acres | 4.670% |
| Sunday Silence 2 Unit | 1,020.40 Acres | 10.771% |
| Needles 39 Unit | 1,363.30 Acres | 3.101% |

**Failure to Develop the Premises.**

19.     In October 2010, Cimarex discovered the Ford, West (Wolfcamp) Field on completion of the Owl Draw 12 Unit No. 1H horizontal well, located approximately 4 miles west of certain tracts in the Prewit Family Lease. Over the next several years, Cimarex drilled and completed at least one horizontal well in the Wolfcamp D zone under each of the Prewit Units. Cimarex's initial development in the Ford, West (Wolfcamp) Field under the Prewit Family

5

Lease and lands pooled therewith was designed to perpetuate the entire Prewit Family Lease beyond its primary term.

20. In March 2013, Cimarex also discovered the Derby (Bone Spring) Field on completion of the Donerail 8 Fee No. 1H horizontal well, located approximately 5 miles southwest of certain tracts in the Prewit Family Lease. According to Cimarex, the Bone Spring formation is correlative across the entire area. Over the next couple of years, Cimarex drilled and completed only two horizontal wells in the Derby (Bone Spring) Field under two of the Prewit Units.

21. In a Railroad Commission of Texas hearing on October 20, 2014, the Ford, West (Wolfcamp) Field was identified as a thick correlative interval underlying the surface of lands in the northeastern part of Culberson County, Texas. Within this designated field interval, the Wolfcamp B, Wolfcamp C, Wolfcamp D and Wolfcamp E zones encompass a thickness of more than 800 feet, within which Cimarex had targeted at least two zones (Wolfcamp C and Wolfcamp D) for development. According to Cimarex, separate horizontal wells were necessary to fully develop both zones, and therefore spacing and density exceptions were necessary to allow for such full development to the current rules for the Ford, West (Wolfcamp) Field. To enable this additional development, the Railroad Commission of Texas approved changes to the special field rules for the Ford, West (Wolfcamp) Field.

22. As part of the amendment to the Prewit Family Lease in 2015, Cimarex agreed to drill as many wells "as a reasonable prudent operator would drill in order to fully develop and explore said land and prevent drainage of oil, gas or other hydrocarbons from the leased premises." Cimarex has not complied with its duty under this provision to fully develop the leased premises.

23. The Well Location Map attached as Exhibit 1 shows the locations of horizontal oil and gas wells producing from the Wolfcamp and Bone Spring formations within the Delaware Basin. The acreage covered by the Prewit Family Lease is highlighted in yellow. Exhibit 1 shows that oil and gas development on neighboring tracts of land is far more extensive than on the property owned by the Prewit Family.

24. The Sunday Silence 2 Unit, the Silver Charm 1 Unit, the Needles 39 Unit, and the Macbeth 22 Fee Unit each have only one productive horizontal well. The Assault 14 Unit, the Day Star 20 Unit, and the Prewit Omaha 26 Unit each have only two productive horizontal wells. The Gallant Fox 37 Unit has only three productive horizontal wells, and the Middleground 16 Unit has five productive horizontal wells. As evidenced by the drilling activity on neighboring lands, a reasonable prudent operator would drill many more wells in all these units to fully develop the oil and gas reserves located thereunder. Anticipated revenues from the sales of oil and gas production would exceed the cost of drilling, completing, and operating those additional horizontal wells on the Prewit Family Lease and the lands pooled therewith, and therefore a reasonable prudent operator would have undertaken drilling and completion of additional horizontal wells with the reasonable expectation of profit.

25. At a hearing held August 5, 2015, before the Railroad Commission of Texas, Cimarex identified additional landing zones to develop within the Ford, West (Wolfcamp) Field with new horizontal wells. According to Cimarex, the four landing zones (Wolfcamp A, Wolfcamp C, typical Wolfcamp D and alternate Wolfcamp D) targeted for development include an overall thickness of 1,500 feet. According to Cimarex, amendments to the special field rules applicable to spacing were necessary to fully develop the targeted zones in the most efficient manner. Chevron U.S.A. Inc., a mineral fee owner and operator in the Ford, West (Wolfcamp)

Field, filed a letter to express its support for Cimarex's application to amend the special rules to allow for more intense drilling to maximize recoveries. To enable this additional development, the Railroad Commission of Texas approved changes to special field rules for the Ford, West (Wolfcamp) Field.

26.     Cimarex and other operators in the Ford, West (Wolfcamp) Field realized that recoveries of oil and gas from known commercial reservoirs in the Wolfcamp XY, Wolfcamp A, Wolfcamp C and Wolfcamp D zones would require multiple stacked / staggered horizontal laterals under each section of land within the productive area surrounding the Prewit Family Lease. For example, six to eight wells traversing each section of land were needed to reasonably develop certain zones within the Upper Wolfcamp. At least six horizontal wells traversing each section of land were needed to reasonably develop certain zones within the Lower Wolfcamp. Significantly more horizontal laterals would be required to fully develop all known commercial zones within the Wolfcamp and Bone Springs formations.

27.     For comparison, Chevron U.S.A. Inc. utilized changes to special field rules for the Ford, West (Wolfcamp) Field, approved by the Railroad Commission of Texas, to reasonably develop reserves in the Wolfcamp A, Wolfcamp C and Wolfcamp D under a section of land that adjoins the Sunday Silence 2 Unit. Chevron U.S.A. Inc. has drilled and completed twenty (20) horizontal wells under its 678.0 acre HH SW 3 Lease, whereas Cimarex has only one (1) completed Wolfcamp D horizontal well located within the adjacent 1,020.4 acre Sunday Silence 2 Unit.

28.     Cimarex has focused its sparse development of the Prewit Family Lease by drilling most of its horizontal wells in the Wolfcamp formation and in so doing, has also failed to reasonably develop the Bone Spring formation. Cimarex has drilled twenty-six (26) horizontal

wells in the Ford, West (Wolfcamp) Field which include the Prewit Family minerals and only five (5) horizontal wells in the Derby (Bone Spring) Field during the same time. This development cadence and density pattern does not reflect the actions of a reasonable prudent operator.

29. Effective December 1, 2015, Cimarex formed the Tim Tam Sharing Area to develop additional Wolfcamp zones in the Ford, West (Wolfcamp) Field. The Tim Tam Sharing Area consists of two pooled units, the Tim Tam 24 Unit and Forward Pass 25 Fee Unit. The Tim Tam 24 Unit includes a portion of the Prewit Family Lease. Cimarex commenced production from five horizontal wells in the Tim Tam Sharing Area in January 2017. Each lateral in the Wolfcamp D zone crossed under the two sections of land included in the Tim Tam Sharing Area.

30. Four years later, Cimarex commenced production from an additional six horizontal wells under the two sections of land combined into the Tim Tam Sharing Area. Each lateral in the Wolfcamp XY and Wolfcamp A zones also crossed under the two sections of land in the Tim Tam 24/25 Allocation Unit. Although not fully developed, eleven horizontal wells under the Tim Tam Sharing Area currently produce from Wolfcamp zones in the Ford, West (Wolfcamp) Field.

31. Notwithstanding the foregoing activity in the Tim Tam Sharing Area, Cimarex has failed to comply with the terms of the Oil and Gas Lease Amendment and Ratification by not fully developing the Tim Tam Sharing Area. Cimarex would need to drill and complete at least ten more wells under these two sections of land to develop them in accordance with its obligations under the Prewit Family Lease.

32. Rather than fully develop the oil and gas reserves under lands covered by the Prewit Family Lease, Cimarex has consistently favored development of oil and gas reserves

outside of the Prewit Units. The last wells drilled by Cimarex on the Prewit Family Lease were horizontally drilled pursuant to permits approved by the Railroad Commission of Texas on September 16, 2019. Yet, since September 16, 2019, Cimarex has received seventy (70) permits to drill horizontal wells in Culberson County from the Railroad Commission of Texas for new wells on leases and units that do not include lands in the Prewit Family Lease. Recently, Cimarex has received six permits to drill horizontal wells from the Railroad Commission of Texas on the Gallant Fox 37 Unit.

**Failure to prevent drainage.**

33. Under the Prewit Family Lease as amended, Cimarex has a duty to prevent drainage of the Prewit Family's minerals. If a commercial oil and/or gas well located on lands adjacent to the leased premises is draining the Prewit Family's land, then Cimarex "shall in good faith begin the drilling of a well or wells upon the land within 180 days after such Draining Well starts producing in commercial quantities and shall prosecute such drilling with diligence." Cimarex has not complied with its duty under this provision of the Prewit Family Lease to prevent drainage of the Prewit Family's mineral interests.

34. The Sunday Silence 2 Unit is being drained by the neighboring HH SW 3 No. 29 HA well. Cimarex has not drilled an offset well or taken other steps to prevent drainage of the Prewit Family's mineral estate from this well as required by the Prewit Family Lease.

35. The Silver Charm 1 Unit is being drained by the Hay Blake 7/6 Allocation Unit No. 21 WA well. Cimarex has not drilled an offset well or taken other steps to prevent drainage of the Prewit Family's mineral estate from this well as required by the Prewit Family Lease.

**CAUSES OF ACTION**

### Breach of lease for failure to develop the premises.

36. The Prewit Family Lease requires Cimarex to drill "such wells as a reasonable prudent operator would drill in order to fully develop" the Prewit Family's mineral estate.

37. Cimarex has breached this express covenant by failing to drill additional wells on the Prewit Family's property or on lands pooled with the Prewit Family's property in order to fully develop the premises as a reasonable prudent operator.

38. Cimarex's breach has caused damage to the Prewit Family through loss of royalties, and it is reasonably probable that such damages will continue in the future. The Prewit Family seeks an award of past damages for the amount of royalties they would have received if Cimarex had fully developed their property as required by the Prewit Family Lease. The Prewit Family further seeks an award of future damages for the amount of royalties that, in reasonable probability, they will lose in the future from Cimarex's failure to fully develop their property as required by the Prewit Family Lease.

### Breach of lease for failure to prevent drainage.

39. The Prewit Family Lease requires Cimarex to drill wells to prevent drainage of the Prewit Family's mineral estate:

> Lessee shall drill such wells as a reasonable prudent operator would drill in order to … prevent drainage of oil, gas or other hydrocarbons from the leased premises. Neither the bonus, nor royalties paid, or to be paid, under this lease, shall relieve Lessee of its obligation to protect the oil and gas under said land from being drained.
>
> Lessee shall drill as many wells as the facts may justify and shall use appropriate means and drill to a depth necessary to prevent undue drainage of oil and gas from said land.

40. Cimarex has breached this provision of the Prewit Family Lease by failing to drill additional wells on the Prewit Family's property or on lands pooled with the Prewit Family's property to prevent drainage.

41. Cimarex's breach has caused damage to the Prewit Family through loss of royalties, and it is reasonably probable that such damages will continue in the future. The Prewit Family seeks an award of past damages for the amount of royalties they would have received if Cimarex had prevented drainage of their property as required by the express terms of the Prewit Family Lease. The Prewit Family further seeks an award of future damages for the amount of royalties that, in reasonable probability, they will lose in the future from Cimarex's failure to prevent drainage as required by express terms of the Prewit Family Lease.

**In the alternative, Breach of implied covenants to develop and to protect from drainage.**

42. Texas law implies in every oil and gas lease covenants to develop the leased premises and to prevent drainage as a reasonably prudent operator under the same or similar facts and circumstances. *Amoco Prod. Co. v. Alexander*, 622 S.W.2d 563 (Tex. 1981). In the alternative to breach of the express covenants in the Prewit Family Lease, Cimarex has breached these implied covenants to develop the leased premises and to prevent drainage as a reasonably prudent operator.

43. In *Amoco v. Alexander*, 622 S.W.2d 563 (Tex. 1981), the Texas Supreme Court discussed the duties of a prudent operator to develop the leasehold and protect the lease against drainage. ("The reasonably prudent operator concept is an essential part of every implied covenant. Every claim of improper operation by a lessor against a lessee should be tested against the general duty of the lessee to conduct operations as a reasonably prudent operator in order to carry out the purposes of the oil and gas lease." *Id*. At 568) Amoco argued that its duties to the

lessor must be considered in light of its obligations to other lessors in the field. The Court disagreed: "Amoco's responsibilities to other lessors in the same field do not control in this suit. This lawsuit is between the Alexanders and Amoco on the lease agreement between them and the implied covenants attaching to that lease agreement. The reasonably prudent operator standard is not to be reduced to the Alexanders because Amoco has other lessors in the same field. Amoco's status as a common lessee does not affect its liability to the Alexanders." *Id*. At 569. Cimarex's duty to Plaintiffs must be considered without regard to Cimarex's other leases or other obligations to its other lessors.

44. Cimarex's breach has caused damage to the Prewit Family through loss of royalties, and it is reasonably probable that such damages will continue in the future. The Prewit Family seeks an award of past damages for the amount of royalties they would have received if Cimarex had fully developed their property and prevented drainage as required by covenants implied in the Prewit Family Lease. The Prewit Family further seeks an award of future damages for the amount of royalties that, in reasonable probability, they will lose in the future from Cimarex's failure to fully develop their property and prevent drainage as required by covenants implied in the Prewit Family Lease.

### Attorneys' fees and costs.

45. Pursuant to Paragraph 15 of the Prewit Family Lease, the Prewit Family seeks an award of their attorneys' fees, expert fees and all costs of preparing and prosecuting the litigation and costs of court.

46. In the alternative, the Prewit Family requests an award of their reasonable and necessary attorneys' fees pursuant to Section 38.001, Texas Civil Practice and Remedies Code.

### TOLLING AGREEMENT

47. Through a Tolling Agreement and subsequent amendments thereto, the Prewit Family and Cimarex have agreed to toll the statute of limitations for the period beginning May 1, 2019 through June 30, 2021 for any claim for breach of the Prewit Family Lease, including but not limited to failure to pay royalties and breach of express or implied covenants.

## DEMAND FOR JURY TRIAL

48. Plaintiffs demand a trial by jury on all issues so triable.

## PRAYER

49. Plaintiffs Prewit Land and Minerals Ltd.; Barbara H. Prewit; John C. Prewit; John C. Prewit, as trustee of the John C. Prewit Revocable Trust; Stephen Neil Prewit; Stephen Neil Prewit and Monica Prewit, as Co-Trustees of the Stephen & Monica Prewit Revocable Trust; Mica Powell Hopkins; Johnnie Marie Powell Ashley; JPSA Family Investments, Ltd.; and Bernadette Mary Kiely respectfully pray for the following relief:

a. Award of damages against Defendant Cimarex Energy Co.;

b. Award of attorney's fees, expert fees, and all costs of prosecuting this litigation;

c. Prejudgment and postjudgment interest as allowed by law;

d. Costs of court; and

e. Such other and further relief, at law or in equity, to which they may show themselves to be justly entitled.

    Respectfully submitted,

    /s/William Christian
    John McFarland
    Texas State Bar No. 13598500
    jmcfarland@gdhm.com
    William Christian
    Texas State Bar No. 00793505
    wchristian@gdhm.com
    Nicholas C. Miller
    Texas State Bar No. 24074723

nmiller@gdhm.com
Guillermo A. Alarcon
Texas State Bar No. 24099176
galarcon@gdhm.com

GRAVES, DOUGHERTY, HEARON & MOODY
A Professional Corporation
401 Congress Avenue, Suite 2700
Austin, TX 78701-3790
(512) 480-5704 Telephone
(512) 480-5804 Telecopier

ATTORNEYS FOR PLAINTIFFS

